16 F.3d 1475
 John LAWSHE, Plaintiff-Appellant,
v.
Steve SIMPSON, Individually and as President of the Board of
Directors of the Gary Health Department; the Gary
Health Department; and the City of
Gary, Indiana, Defendants-Appellees.
 No. 93-1182.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 3, 1993.
Decided Feb. 18, 1994.
 
 1
 James B. Meyer (argued), King & Meyer, Gary, IN, for plaintiff-appellant.
 
 
 2
 Cora M. Vaughn, Reginald W. Marcus (argued), Vaughn & Associates, Gilbert King, Jr., Corp. Counsel, Gary, IN, for defendants-appellees.
 
 
 3
 Before POSNER, Chief Judge, COFFEY, Circuit Judge, and ZAGEL, District Judge.*
 
 
 4
 ZAGEL, District Judge.
 
 
 5
 In 1988, Dr. Steve Simpson, President of the Gary Health Department Board, notified John Lawshe that the department's reorganization plans included vacating Lawshe's position and seeking applications from qualified candidates. Simpson told Lawshe that he could keep the job only by re-applying. Lawshe declined, and, on October 17, 1988, received notice that his employment with GHD would end on the last day of that month.
 
 
 6
 Lawshe had no written contract with GHD, but the department had adopted the City of Gary Personnel Manual as its own personnel policy. Also, Lawshe gave deposition testimony that GHD's custom and practice was not to fire employees without cause and some sort of hearing or consultation. During his deposition, Lawshe testified that he could not "recall any public situation where you're fired without cause." He also stated that in his case, "the general procedures for laying someone off or firing someone was [sic] not adhered to." When asked what those general procedures were, Lawshe answered, "Well, generally, you were called in--in the case of the staff, you were called in by the Health Officer for some infraction of the rules to explain to you what you had not done or what you had done or something. There was some kind of consultation that went on between that employee and the Health Commissioners."
 
 
 7
 Lawshe filed this suit in federal court on October 30, 1990, alleging that GHD terminated his public employment without due process, in violation of the Fourteenth Amendment. Finding Lawshe's claim without foundation in fact or law, the district court entered summary judgment in GHD's favor, and, pursuant to Federal Rule of Civil Procedure 11 and 42 U.S.C. Sec. 1988, ordered Lawshe to pay his adversary's legal fees and costs. In disposing of Lawshe's subsequent Motion for Reconsideration and Rehearing, the court affirmed its earlier ruling and added that the applicable statute of limitations bars his claim. Lawshe appeals.[1]
 
 
 8
 We review a grant of summary judgment de novo and uphold the district court's judgment if we find no disputed issues of material fact and conclude that the defendants must prevail as a matter of law. Sherman v. Four County Counseling Center, 987 F.2d 397, 400 (7th Cir.1993). We must review the record and draw all inferences in the light most favorable to the non-movant, but a scintilla of evidence in support of the non-movant's position is insufficient to successfully oppose summary judgment; there must be evidence on which a jury could reasonably find for the plaintiff. Brownell v. Figel, 950 F.2d 1285, 1289 (7th Cir.1991). Our review of a district court's interpretation of state law is "in the fullest sense de novo." Trustees of First Union Real Estate Equity and Mortgage Investments v. Mandell, 987 F.2d 1286 (7th Cir.1993), citing Salve Regina College v. Russell, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). We may affirm summary judgment on any issue that the non-moving party has had an opportunity to contest in the trial court. Box v. A & P Tea Company, 772 F.2d 1372, 1376 (7th Cir.1985).
 
 
 9
 The district judge found, and Lawshe does not contest, that the statute of limitations applicable to his claim runs for two years. Lawshe filed suit on October 30, 1990. This was too late, ruled the district judge, because the two-year limitation period ran from October 17, 1988, the date Lawshe received notice that his employment with GHD would terminate on the last day of that month. Lawshe says the limitations period did not commence until October 31, 1988, the last day of his employment.
 
 
 10
 State law determines the appropriate limitations period for Sec. 1983 actions, but federal law determines when a federal cause of action accrues, and thus when the limitations period begins. Section 1983 claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated. Kelly v. City of Chicago, 4 F.3d 509, 511 (7th Cir.1993). Our task, therefore, is to identify the constitutional violation and locate it in time. Id.
 
 
 11
 The result might turn on a rather nice semantic distinction. Is the Fourteenth Amendment violation alleged here "deprivation of public employment without due process" or "denial of pretermination due process?" The former locution suggests that the cause of action accrues after employment is lost--one has not been deprived of employment without due process until one has been deprived of employment. Such reasoning seems to underlie the Fifth Circuit's conclusion that, despite notice of termination, a Sec. 1983 plaintiff's injury was not "complete" until "her employment period terminated and she ceased to perform paid services." Rubin v. O'Koren, 621 F.2d 114, 116 (5th Cir.1980).
 
 
 12
 The alternate construction--"denial of pretermination due process"--leads elsewhere. In Hoesterey v. City of Cathedral City, 945 F.2d 317, 320 (9th Cir.1991), the Ninth Circuit said that "the failure to provide the requisite procedure rather than the actual decision to terminate" constitutes the Fourteenth Amendment violation. Thus, the limitations period starts with clear notice of a final decision to terminate without further process. Id. "In the absence of such unequivocal notice, it would only be on the last day of employment that [the employee] could become aware that the decision was final and that no further process could be forthcoming prior to termination." Id. Indeed, the court found that Hoesterey had not received unequivocal notice prior to his last day of employment, and therefore his cause of action accrued when he was out of his job.
 
 
 13
 The Ninth Circuit stood on Chardon v. Fernandez, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1982) (per curiam), a case decided after Rubin v. O'Koren. The Supreme Court held that the statute of limitations on a claim of politically motivated termination runs from the date plaintiffs received notice that a final decision to terminate had been made. The Court simply extended its Title VII rule, see Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), to a First Amendment case arising under Sec. 1983. In analyzing the question of when the cause of action accrues, the Court said,
 
 
 14
 [T]he proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful. The fact of termination is not itself an illegal act.... In Ricks, the alleged illegal act was racial discrimination in the tenure decision. Here, respondents allege that the decision to terminate was made solely for political reasons, violative of First Amendment rights.... [M]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.... The fact that [employees] were afforded reasonable notice cannot extend the period within which suit must be filed.
 
 
 15
 Id., 454 U.S. at 8, 102 S.Ct. at 29 (emphasis in original).
 
 
 16
 Thus, the Supreme Court identified the First Amendment violation as the improperly motivated decision to terminate, rather than termination on impermissible grounds.[2] In reading Chardon, the Ninth Circuit apparently reasoned that if a First Amendment cause of action could accrue before actual discharge, then so could a procedural due process claim.
 
 
 17
 But the Ninth Circuit failed to measure its analysis against the Fourteenth Amendment text: "... nor shall any State deprive any person of life, liberty, or property, without due process of law." By holding that the alleged constitutional violation in a procedural due process case lies in the denial of pre-deprivation due process rather than in the deprivation of "life, liberty, or property, without due process," we would re-write the Fourteenth Amendment. Chardon does not warrant this.
 
 
 18
 In Chardon, non-tenured administrators alleged that they had been terminated for political reasons, in violation of their First Amendment rights. The Court held that the alleged decision to terminate for political reasons constituted the First Amendment violation rather than the termination itself. 454 U.S. at 8, 102 S.Ct. at 29. The Court mentioned neither the Fourteenth Amendment nor property rights because Chardon was not a Fourteenth Amendment case.[3]
 
 
 19
 But consider how Chardon would affect a substantive due process claim against a state official who allegedly violated an employee's right to free speech by firing him. Such an action would be possible because the First Amendment has been incorporated into the Fourteenth Amendment as a liberty interest. Gitlow v. New York, 268 U.S. 652, 666, 45 S.Ct. 625, 629, 69 L.Ed. 1138 (1925) ("freedom of speech ... [is] among the fundamental personal rights and 'liberties' protected by the due process clause of the Fourteenth Amendment from impairment by the states"). After Chardon, we would have to say that this liberty interest would be violated by the impermissibly motivated decision to terminate rather than the termination itself. Such a ruling would be in perfect harmony with the Fourteenth Amendment as written. Nothing in the Fourteenth Amendment tells us, in such a case, whether the impermissibly motivated decision to terminate or the termination itself constitutes deprivation of the right to free speech. Our ruling, following Chardon, would simply define the act constituting an alleged deprivation of liberty.[4]
 
 
 20
 Lawshe, however, alleges deprivation of property without due process--an allegation predicated on his claim of a property right in public employment. Sometime before October 17, 1993, GHD decided to deprive Lawshe of that employment on October 31, 1993. Until then, he worked and received a salary. No deprivation of employment occurred until the end of the month. By following Hoesterey in this case, we would have to hold that the Fourteenth Amendment violation alleged by Lawshe preceded the actual deprivation of his property right in public employment. Chardon provides no authority for such a holding, nor for the concomitant jiggering of the Fourteenth Amendment text.
 
 
 21
 We agree with the Fifth Circuit that a claim for deprivation of public employment without due process accrues on, and the statute of limitations begins to run from, the actual termination of employment. Lawshe's claim was timely; we proceed, finally, to the substance of his appeal.
 
 
 22
 The district court granted summary judgment on finding that Lawshe had no property right in his employment by GHD. The court concluded correctly that Lawshe had no property right arising from contract or statute. But a property right in employment need not arise from contract or statute; it may also arise from an "unwritten common law" of employment, Perry v. Sindermann, 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972); Hermes v. Hein, 742 F.2d 350, 354-55 (7th Cir.1984); Hadley v. DuPage County, 715 F.2d 1238 (7th Cir.1983), or legally binding rules and regulations, Hohmeier v. Leyden Comm. High Schools Dist. 212, 954 F.2d 461 (7th Cir.1992). But neither theory eliminates Lawshe's burden of showing that, under Indiana law, an employee in his position has an entitlement to his job. See Perry, 408 U.S. at 602 n. 7, 92 S.Ct. at 2700 n. 7, Bishop v. Wood, 426 U.S. 341, 345, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976) (whatever theory of property right a plaintiff advances, "the sufficiency of the claim of entitlement must be decided by reference to state law").
 
 
 23
 Lawshe's deposition testimony about departmental custom and practice, standing alone, is insufficient to establish a property right. "A common law of employment is established through rules or mutually explicit understandings and not solely through the past practices of the employer." Hermes, 742 F.2d at 355 (citations omitted).[5]
 
 
 24
 But Lawshe has also consistently argued that because GHD adopted the City of Gary Personnel Manual as its own personnel policy pursuant to the Indiana Code, the Manual's provisions "constitute existing rules and regulations that stem from state law." In the alternative, he argues that, when considered together with his testimony about GHD custom and practice, the rules evidenced a common law of employment.
 
 
 25
 The parties in this case have been talking past each other in disputing the significance of the Manual's provisions. Lawshe characterizes these provisions as rules and regulations that can give rise to a property right. The defendants characterize the Manual as an employee handbook that is immaterial without an employment contract for a definite duration. The result of this failure to meet head-on was an incomplete statement of Indiana law by the district court, which adopted GHD's legal theory and refused to consider the Manual's contents.
 
 
 26
 All but one of the cases on which the district court relied in summarily dismissing the Manual's significance concerned private employment, and the only public employment case, Tri-City Comprehensive Community Mental Health Center v. Franklin, 498 N.E.2d 1303, 1305 (Ind.App.1986), itself relied on private employment precedents. Franklin did so because the plaintiff claimed only that her public employer's employee handbook "brought into being a bona fide unilateral contract." The court in Franklin was not confronted with a claim, such as Lawshe's, that the manual evidenced mutually explicit understandings that could give rise to a property right under Perry's common-law-of-employment theory. As Judge Barker recognized in Shannon v. Bepko, 684 F.Supp. 1465, 1478 (S.D.Ind.1988), whether, under Indiana law, an employee handbook creates a contract is a different question from whether "the policies and practices of the [employing] institution" create a property right.
 
 
 27
 The weight of authority in Indiana holds that a public employer's rules and regulations can create a property right when they are appropriately promulgated. For example, in Indiana Department of Highways v. Pigg, 533 N.E.2d 184, 185 (Ind.App.1989), the court affirmed that "Indiana [ ] recognizes that the governmental agency's statutory authority or its rules and regulations may ... create vested rights," but distinguished earlier cases recognizing property rights based on rules and regulations because "there is no indication in the record that the Department's employee handbook grievance procedure set forth duly promulgated rules and regulations." See also Wells v. Auberry, 476 N.E.2d 869, 873 (Ind.App.1985) (rules and regulations promulgated pursuant to statute conferred property right); Indiana Alcoholic Beverage Commission v. Gault, 405 N.E.2d 585, 589 (Ind.App.1980) ("the Commission's authority as provided by statute is subject to any rules and regulations which the Commission may have promulgated. So we must consider if, by regulation, Gault was entitled to a determination of cause or any other procedural safeguard."); Town of Speedway v. Harris, 169 Ind.App. 100, 346 N.E.2d 646, 647, 650 (1976) (property interest arose from fire department rules and regulations which had been presented to plaintiff on first day of employment). This circuit has recognized a similar proposition. See Hermes, 742 F.2d at 355 ("we cannot conclude that the record reflects a rule or mutually explicit understanding sufficient to establish a due process property interest" absent "evidence from which we can reasonably infer that this alleged policy was ever promulgated throughout the [ ] department or stated to any of the plaintiffs").
 
 
 28
 In light of these state court decisions, Lawshe's argument requires analysis under two theories of how a public employer's personnel rules might create a property right, regardless of their significance under contract law. Both theories require a court to determine whether the rules on which a plaintiff relies are "intended to guide [ ] internal management ... rather than to create enforceable rights" against the employer. Hohmeier, 954 F.2d at 465. See also Hermes, 742 F.2d at 354-55.
 
 
 29
 First, a statute might make a public employer's rules legally binding. But in Hohmeier we rejected such a claim because the employer adopted its personnel rules pursuant to a statute that authorized it, but did not require it to do so. We noted that:
 
 
 30
 the statute requires the Board to "adopt and enforce" only those rules it finds "necessary." Presumably, the Board may also revoke any of its rules if the Board determines that they are no longer "necessary." We noted in Miller:[6]
 
 
 31
 ... When the policy manual can vanish with a waive of the administrator's wand, or when the administrator is free to disregard his own words, the [plaintiff] has nothing of substance and therefore neither liberty nor property.
 
 
 32
 954 F.2d at 465-66. The Indiana Code provision on which Lawshe relies[7] is similarly permissive:
 
 
 33
 The board of each local health department may adopt procedural rules for the board's guidance and to establish administrative and personnel policies of the health department that are consistent with the administrative operating policy of the appointing authority.
 
 
 34
 IC Sec. 16-1-4-25, repealed by P.L. 2-1993 Sec. 209, effective July 1, 1993. The statute did not require GHD to have its own personnel policy, but merely authorized it to adopt policies consistent with the Mayor's.
 
 
 35
 Even so, the Manual's provisions could still support an argument under Perry's common-law-of-employment theory. This is the second way in which rules and regulations, regardless of their effect under contract law, might create property rights. But the critical requirement here is that a plaintiff prove the existence of a "mutually explicit understanding." Hermes, 742 F.2d at 355. See also Hohmeier, 954 F.2d at 465 (noting that the rules and regulations had been kept secret from employees). Without contradiction from GHD, Lawshe alleged that the department had adopted the City of Gary Personnel Manual as its personnel policy, but he neither alleged nor offered any evidence establishing that the Manual or its contents were ever appropriately promulgated as rules and regulations of GHD.
 
 
 36
 Lawshe came closest in his Motion for Reconsideration, where he argued that "there is absolutely no dispute that the Personnel Manual ... was lawfully promulgated by" the Mayor of Gary, and "adopted and followed" by the GHD Board (emphasis added). Not only is the allegation insufficient as stated, but, more importantly, the proof offered to back it up--the deposition of GHD Board President Steve Simpson--provides no basis for inferring the existence of a mutually explicit understanding between Lawshe and GHD:
 
 
 37
 Q: You testified that you, at least in part, relied upon city personnel policy in regards to how to deal with employees?
 
 
 38
 A: Right.
 
 
 39
 Q: Did you rely on any other policies in regards to your dealings with the employees of the Health Department?
 
 
 40
 A: Well, no. As far as I can remember. I think that the city personnel policy was--it was a city personnel issue. He was an employee of the city.... So we looked at the clause under termination and he is a--what do call them--an "at will" employee.
 
 
 41
 Interestingly, Lawshe never argued that the City of Gary Personnel Manual directly gave him a property right, regardless of GHD's policies. Remember that the statute authorizing GHD to adopt personnel policies limits the range of permissible policies to those "consistent with the administrative operating policy of the appointing authority." IC Sec. 16-1-4-25, repealed by P.L. 2-1993 Sec. 209, effective July 1, 1993. The Mayor of Gary was the appointing authority. IC Sec. 16-1-7-15, repealed by P.L. 2-1993 Sec. 209, effective July 1, 1993. If the Mayor had "lawfully promulgated" a personnel manual that permitted discharge only for cause, then it seems unlikely that employment at GHD could be at will, and thus likely that Lawshe would have a property right in his employment. McCammon v. Indiana Department of Financial Institutions, 973 F.2d 1348 (7th Cir.1992) ("[p]ublic employees subject to dismissal only for just cause are entitled to oral or written notice of the charges against them, an explanation of the employer's evidence, and an opportunity to present their side of the story prior to their discharge"), citing Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985).
 
 
 42
 But a victory for Lawshe under that theory might have been hollow because he can seek damages from the City only if GHD was the City's final policymaking authority in this area. Jett v. Dallas Independent School District, 491 U.S. 701, 736-37, 109 S.Ct. 2702, 2722-23, 105 L.Ed.2d 598 (1989); City of St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (plurality opinion). That is, in fact, the position Lawshe adopted regarding municipal liability, and he would have undermined that position by offering the City of Gary Personnel Manual, rather than GHD's adoption of it, as the source of his property right.
 
 
 43
 Whether Lawshe considered all of this or not, the fact remains that he never offered evidence from which we can infer the existence of a mutually explicit understanding between Lawshe and GHD sufficient to give rise to a property right. Although the defendants have never challenged Lawshe specifically on the issue of promulgation, the brief supporting their motion for summary judgment stated that Lawshe could prove no facts that would support a Fourteenth Amendment claim. This gave Lawshe a fair opportunity to submit evidence showing that GHD had appropriately promulgated rules and regulations that created a property right. Compare Box v. A & P Tea Company, 772 F.2d 1372, 1376 (7th Cir.1985). "We may affirm a summary judgment on any ground that finds support in the record" where the ground has been "adequately presented in the trial court so that the non-moving party had an opportunity to submit affidavits or other evidence and contest the issue." Id.
 
 
 44
 In Indiana, a public employer's policies do not create property rights just because they are adopted and followed; they create property rights when they have been adequately promulgated. See Pigg, 533 N.E.2d at 185 ("in Gault [405 N.E.2d 585, 589 (Ind.App.1980) ], the court stated that the government agency's authority as provided by statute is subject to any rules and regulations which the government agency 'may have promulgated' "). To withstand a motion for summary judgment under a common-law-of-employment theory, Lawshe must have, and has not, established a genuine issue concerning GHD's promulgation of its personnel policies.
 
 
 45
 We also observe that even if Lawshe had survived summary judgment, the doctrines of qualified official immunity and municipal liability would have severely curtailed the available relief. We recently re-stated the conditions of qualified immunity:
 
 
 46
 [P]ublic officials performing discretionary functions are protected against suits from damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the right alleged to have been violated was "clearly established," the constitutional right must be identified in a particularized sense with respect to the circumstances of the alleged violation. In other words, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The plaintiff bears the burden of showing that the constitutional right allegedly violated was clearly established before the defendant acted or failed to act. This requires the plaintiff to offer a closely analogous case or evidence that the defendant's conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts. To determine the applicability of qualified immunity, the defendant's actions must be compared to what a reasonable official would believe was required in light of the clearly established legal rules....
 
 
 47
 Casteel v. Pieschek, 3 F.3d 1050, 1053 (7th Cir.1993) (citations and quotation marks omitted). The Indiana case law, taken as a whole, is sufficiently unclear to prevent us from concluding that a reasonable official in Dr. Simpson's position would have known that a property right in employment could have arisen from provisions in the Manual adopted as GHD's personnel policy. Dr. Simpson, therefore, would enjoy immunity from Lawshe's suit.
 
 
 48
 As for the City of Gary: "Municipalities are answerable only for their own decisions and policies; they are not vicariously liable for the constitutional torts of their agents." Auriemma v. Rice, 957 F.2d 397, 399 (7th Cir.1992), citing Monell v. New York Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Lawshe has not alleged that municipal policy caused his discharge; in fact, he alleges that the discharge contravened policy codified in the City of Gary Personnel Manual. Nor does he offer evidence establishing a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law. Monell, 436 U.S. at 691, 98 S.Ct. at 2036. He argues that the decision of GHD's Board to terminate him without due process constituted municipal policy because the Board was the city's final policymaking authority on GHD personnel policy.
 
 
 49
 Although the Indiana Code does not expressly grant the Mayor authority to directly review GHD's personnel policy, it could be interpreted to do so implicitly. In any case, as already indicated, it clearly subordinates the Board's discretion in this area to the Mayor's policy. "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (plurality).
 
 
 50
 Our conclusion here means that Lawshe could not have recovered back pay or any other form of retrospective relief from the City of Gary. Under Ninth Circuit law, he might have pursued the only purely prospective relief requested in his complaint: reinstatement. Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1472-73 & n. 1 (9th Cir.1993). But we need not decide whether to follow Gates on this point because Lawshe never established a property right in the first place.
 
 
 51
 We turn now to the final issue on appeal: the district court's imposition of fees and costs under Rule 11 and 42 U.S.C. Sec. 1988. "Rule 11 prohibits the filing of pleadings that are not reasonably based in the law or in fact and forbids the filing of pleadings that are interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increased cost of litigation." Kapco Manufacturing Co. v. C & O Enterprises, Inc., 886 F.2d 1485, 1491 (7th Cir.1989) (citation omitted). Under 42 U.S.C. Sec. 1988, the court may award attorney's fees to a prevailing defendant who demonstrates that "the plaintiff brought [his] action in subjective bad faith, or that the plaintiff's action was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith." Unity Ventures v. County of Lake, 894 F.2d 250, 253 (7th Cir.1990) (quotation marks and citation omitted).
 
 
 52
 The district court did not find that any papers had been interposed for an improper purpose, nor that Lawshe brought his action in bad faith. Rather, the court found that Lawshe "had no basis in law or fact when he filed his complaint." The court based this conclusion on the proposition that the existence of a personnel manual has no bearing on the question of property rights in employment. But, as we have explained above, this is an incomplete statement of Indiana law. Lawshe had argued that a public employer's rules and regulations can create a property right regardless of contract law, and he cited Town of Speedway v. Harris, 169 Ind.App. 100, 346 N.E.2d 646, 647, 650 (1976), for support. The district court neither mentioned this case nor addressed the legal theories Lawshe advanced. Given the case law discussed earlier, we cannot agree that Lawshe's complaint had no basis in law or fact when he filed his complaint and we cannot conclude that the district court appropriately exercised its discretion in assessing sanctions and fees against Lawshe.
 
 
 53
 We affirm the district court's entry of summary judgment against the plaintiff, but reverse the imposition of sanctions and fees.
 
 
 
 *
 Hon. James B. Zagel, Northern District of Illinois, sitting by designation
 
 
 [1]
 GHD contends that this court lacks jurisdiction because Lawshe did not timely file notice of appeal. See Lentomyynti Oy v. Medivac, Inc., 997 F.2d 364, 366 (7th Cir.1993) ("We do not have jurisdiction to hear an appeal unless an appellant files a timely notice of appeal."). The Federal Rules of Appellate Procedure require that notice of appeal be filed within thirty days of entry of the judgment or order appealed from. FRAP 4(a)(1)
 Any post-judgment motion on the merits served within ten days of judgment is deemed to be made under FRCP 59(e) when determining whether notice of appeal has been timely filed, Boyle v. Chicago Housing Authority, 946 F.2d 54, 56 (7th Cir.1991); Charles v. Daley, 799 F.2d 343, 347 (7th Cir.1986), even where, as here, the trial court treats it as a Rule 60 motion. And when a party serves a valid 59(e) motion, notice of appeal is timely if filed within thirty days of the court's disposition of that motion. FRAP 4(a)(4).
 This issue reduces to a question of whether Lawshe served his motion within ten days of judgment. Summary judgment occurred on March 20, 1992, and Lawshe served his motion for rehearing and reconsideration on April 3. Computation of time periods prescribed by the Rules of Civil Procedure is governed by Rule 6, which specifies, in part, that the day of the event from which the designated period begins to run does not count and, when the prescribed period is less than eleven days, neither do Saturdays and Sundays. The prescribed period under Rule 59(e) is ten days; March 21st and 28th were Saturdays; the 22nd and 29th were Sundays; and the 20th does not count because it was the date from which the prescribed period began to run.
 So, Lawshe served his motion within ten days of the court's judgment and it counts as a 59(e) motion. The district court disposed of that motion on December 18, 1992, and Lawshe filed notice of appeal on January 15, 1993. The notice was timely; this court has jurisdiction.
 
 
 [2]
 Had the Court described the discriminatory act as "termination on impermissible grounds," it might have reasoned that one cannot be terminated on impermissible grounds until one is terminated, and, therefore, might have held that the limitations period does not start to run until employment has ended. There were sound arguments for adopting this approach, and they would cut in Lawshe's favor here. But dissenting justices stated those arguments well, id. 454 U.S. at 9, 102 S.Ct. at 29 (Brennan dissenting); id. at 10, 102 S.Ct. at 30 (Stevens dissenting), and could muster only three votes to the majority's six
 
 
 [3]
 Although the Supreme Court has determined that the due process clause of either the Fifth or Fourteenth Amendment applies to Puerto Rico, Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 668-69 n. 5, 94 S.Ct. 2080, 2084 n. 5, 40 L.Ed.2d 452 (1974), the Court has never decided which. It has, however, determined that the First Amendment applies. Posadas de Puerto Rico Associates v. Tourism Company of Puerto Rico, 478 U.S. 328, 331 n. 1, 106 S.Ct. 2968, 2971 n. 1, 92 L.Ed.2d 266 (1986), citing Balzac v. People of Porto [sic] Rico, 258 U.S. 298, 314, 42 S.Ct. 343, 349, 66 L.Ed. 627 (1922). The Chardon plaintiffs could, therefore, bring a First Amendment claim against their employer, the Secretary of Public Education of Puerto Rico, without invoking the Fourteenth Amendment
 
 
 [4]
 The Chardon rule seems especially apt when liberty interests are at stake, since knowledge of an impermissibly motivated employment decision may chill the exercise of liberty rights before any deprivation of employment has occurred
 
 
 [5]
 Lawshe incorrectly suggests that our decision in Gorman v. Robinson, 977 F.2d 350 (7th Cir.1992), supports the much broader proposition that a property right arises whenever "all of the surrounding circumstances would reasonably lead the employee to believe he would only be terminated for cause." We said no such thing in Gorman, but clearly recognized the need for a mutually explicit understanding. Id. at 356
 
 
 [6]
 Miller v. Henman, 804 F.2d 421, 425 (7th Cir.1986)
 
 
 [7]
 Actually, in addition to the provision quoted in the text, Lawshe also cites IC Sec. 16-1-7-33, which stated that
 The board of each city health department may adopt procedural rules and regulations for its own guidance and as may be deemed necessary or desirable to protect, promote, or improve public health or to control disease not inconsistent with statutes of the state and rules of the board of the state board.
 This provision strikes us as focusing on the authority to make rules that affect the general public more directly than personnel regulations. Furthermore, the language of this provision is even closer to the statutory language found insufficient in Hohmeier.