Gregory LITTLE, Plaintiff,

v.

STATE OF ILLINOIS DEPARTMENT OF REVENUE, BUREAU OF CRIMINAL INVESTIGATION; Steven Hirsch, Individually and as Bureau Manager for the Bureau of Criminal Investigation; and Michael Fullman, Defendants.

No. 95 C 2792.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 8, 1995.

Gerald A. Goldman, Arthur R. Ehrlich, Jonathan C. Goldman, Law Offices of Gerald A. Goldman, Chartered, Chicago, IL, for plaintiff.

Mitchell Bruce Katten, Illinois Attorney General's Office, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Gregory Little filed this employment discrimination action under Title VII, 42 U.S.C. § 2000(e), et. seq., and 42 U.S.C. § 1983, against defendants State of Illinois Department of Revenue (the "Department"), Steven Hirsch ("Hirsch"), and Michael Fullman ("Fullman"). Plaintiff alleges that defendants: (1) retaliated against plaintiff for objecting to defendants' alleged racially discriminatory employment practices, in violation of Title VII (Count I); (2) engaged in racially discriminatory conduct against plaintiff, in violation of Title VII (Count II); and (3) retaliated against plaintiff for his opposition to discriminatory practices in violation of his rights as secured by the due process clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 ("§ 1983") (Count III). Defendant Hirsch has moved to strike Counts I and II of the complaint against him under Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Additionally, defendants Hirsch and Fullman

have moved to dismiss Count III in its entirety pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the court grants in part and denies in part defendants' motion.

## FACTS [1]

Plaintiff is an African–American male who was employed with the Department's Bureau of Criminal Investigation (the "Department") as a Revenue Special Agent. Hirsch, the Bureau Manager, and Fullman, the Special Agent in Charge, supervised plaintiff at all times relevant to the complaint. Beginning in June 1992, plaintiff objected to defendants' alleged racially discriminatory practices. These practices included the denial of travel expenses and promotions to African–American agents within the Department. Plaintiff advised defendants he would be filing formal employment discrimination charges if the discriminatory practices against African–American agents continued.

In August 1993, plaintiff applied for a supervisory position. Following plaintiff's application, defendants added a new job requirement to the position, which disqualified plaintiff. When plaintiff requested an interview for the position in January 1994, he was told he would not be interviewed because he failed to meet the job's new requirements. Plaintiff advised Hirsch that this new requirement unfairly discriminated against African–American agents who were otherwise qualified for the position. Hirsch accused plaintiff of being a "race-baiting" agitator and selected a white male for the position.

That same month, defendants transferred plaintiff from his office in Evergreen Park to the Illinois Gaming Board, another Department division, in Joliet, Illinois. Defendants ignored plaintiff's formal objections to the transfer.

In February and May of 1994, plaintiff continued to complain to Hirsch about the Department's racially discriminatory hiring and promotion practices. Following these complaints, defendants transferred plaintiff again on June 3, 1994. This time, plaintiff was transferred to a different office of the Illinois Gaming Board, and given mainly ministerial duties. On June 16, 1994, less than two weeks after this transfer, defendants told plaintiff his credentials to act as a peace officer were being revoked. At that time, they also denied his request for a leave of absence. Defendants offered no explanation for either action.

Four days later, on June 20, 1994, defendants denied plaintiff the use of a state vehicle for work-related matters. Other similarly situated agents retained use of their state vehicles. That same day, defendants ordered plaintiff to undergo a psychological "fitness for duty" examination before he could continue to work. Defendants delayed scheduling this evaluation several weeks, preventing plaintiff from working. On June 23, 1994, defendants informed plaintiff he would no longer be reimbursed for travel and transportation expenses when using his personal car for work matters, while other agents continued to be reimbursed.

In July 1994, defendants refused to promote plaintiff to Senior Special Agent, although pursuant to a Union agreement, the Department had agreed to promote all Special Agents of a certain seniority to the position of Senior Special Agent and promoted other less qualified and less senior agents.

On August 5, 1994, plaintiff filed a formal charge of race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Defendants threatened to initiate termination charges against plaintiff if he failed to withdraw all complaints and grievances. Plaintiff did not withdraw his complaints. In September 1994, shortly after receiving notice of the EEOC charge and after plaintiff passed his psychological examination, defendants filed allegedly false charges of misconduct against plaintiff. At a pre-disciplinary hearing on

---

**1.** The facts are taken from the allegations in the complaint. When considering a motion to dismiss pursuant to Rule 12(b)(6), this court must accept all well-pleaded facts and allegations in the complaint as true, make reasonable inferences therefrom, and view the allegations in the light most favorable to the plaintiff. See, e.g., *Albright v. Oliver*, ―― U.S. ――, ――, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994); *Badger Pharmacal, Inc., v. Colgate–Palmolive Co.*, 1 F.3d 621, 626 (7th Cir.1993), *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981).

these charges, defendants refused to permit plaintiff's attorney to remain at the hearing, despite plaintiff's entitlement to have his representative present. Following the pre-disciplinary hearing, defendants persisted in these charges, manufacturing false evidence against plaintiff, despite plaintiff's demonstration that the charges were baseless.

Defendants notified plaintiff in November that he would be suspended pending discharge based on these charges. Defendants terminated plaintiff in December 1994.

## DISCUSSION

■ Under Rule 12(b)(6), a complaint can be dismissed for failure to state a claim "only if the plaintiff can not prove any set of facts upon which relief may be granted." *Rankow v. First Chicago Corp.,* 870 F.2d 356, 357 n. 1 (7th Cir.1989). Further, in considering a motion to dismiss, the court must "accept as true all facts alleged in the ... complaint and ... draw all reasonable inferences from the pleadings in favor of the [plaintiff]." *Gillman v. Burlington Northern Railroad Co.,* 878 F.2d 1020, 1022 (7th Cir. 1989). It is unnecessary that a plaintiff correctly identify the governing legal theory of a claim, if the facts alleged in the complaint support a claim. *Teumer v. General Motors Corp.,* 34 F.3d 542, 545 (7th Cir.1994).

■ In defending against a motion to dismiss, a plaintiff may "allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle him to judgment." *Early v. Bankers Life and Casualty Co.,* 959 F.2d 75, 79 (7th Cir.1992). Moreover, the Seventh Circuit recently held that in responding to a motion to dismiss, the nonmoving party may clarify the legal basis supporting his or her claims. *Stransky v. Cummins Engine Co.,* 51 F.3d 1329 (7th Cir.1995).

In plaintiff's response to defendants' motion to strike and dismiss, plaintiff concedes that Hirsch cannot be held liable under Title VII because he was not plaintiff's "employer." Consequently, defendant's motion to strike Counts I and II against Hirsch is

granted. Accordingly, the only issue left for this court to consider is defendants' motion to dismiss Count III of the complaint.

### § 1983

■ In moving to dismiss plaintiff's § 1983 claim, defendants raise several arguments. First, they argue that plaintiff's § 1983 claim must be dismissed because plaintiff has failed to state a claim for a due process violation of his liberty interest in public employment. Second, defendants argue that plaintiff has failed to allege sufficiently a deprivation of property without due process because he has not alleged that he had a constitutionally recognized property interest in his employment. Defendants also argue that plaintiff's claim fails to rise to the level of a deprivation of property without due process because he has not alleged that he was denied process to which he was entitled. Finally, defendants argue that plaintiff's due process claim is deficient because an adequate post-deprivation remedy exists.

Defendants in this case blur the distinction between procedural due process claims and other constitutional injuries remedied under § 1983. As the Supreme Court explained in *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990), there are three types of § 1983 actions: (1) violation of rights under the Bill of Rights, (2) violations of substantive due process rights, and (3) violations of procedural due process rights. Consequently, defendants incorrectly focus on the existence of a liberty or property interest in public employment or, alternatively, the adequacy of process afforded plaintiff. As plaintiff clarifies in his response brief, his claim is a substantive, not a procedural, due process claim. The alleged unconstitutional act underlying the § 1983 claim is not the deprivation of a liberty or property interest or inadequate process, but rather defendants' retaliatory conduct itself.

The initial inquiry in every § 1983 action "must focus on whether the two essential elements of a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws

of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). Only the second prong of this test is at issue in this case.

As the Seventh Circuit has recently held, "[a]n allegation of deprivation of due process rights states a claim under both procedural and substantive due process." *Black v. Lane,* 22 F.3d 1395, 1402 (7th Cir.1994). In examining § 1983 claims, the Seventh Circuit has noted that "simply because they are not 'procedural due process' injuries, other constitutional harms may arise no matter how much process is afforded." *Sherwin Manor Nursing Center v. McAuliffe,* 37 F.3d 1216, 1220 (7th Cir.1994). "Substantive due process is a shorthand for the fact that the Supreme Court has interpreted the due process clause of the Fourteenth Amendment to confer certain substantive rights based mainly on the Bill of Rights." *Toney–El v. Franzen,* 777 F.2d 1224, 1227 (7th Cir.1985) (citing *Brown v. Brienen,* 722 F.2d 360, 366 (7th Cir.1983).

The Seventh Circuit has likewise held that "substantive rights" include those rights guaranteed in the Bill of Rights. *Lawshe v. Simpson,* 16 F.3d 1475, 1479 (7th Cir.1994). Consequently, the *Lawshe* court held that a substantive due process claim against a state official who allegedly violated a plaintiff employee's free speech rights by retaliating against the plaintiff for his speech "would be possible because the First Amendment has been incorporated into the Fourteenth Amendment...." *Id.*

The Seventh Circuit has specifically held that state retaliatory conduct constitutes a substantive due process violation if the retaliation was for exercising constitutional rights. *Black,* 22 F.3d 1395, 1402–03. In *Black,* the court held that retaliatory conduct by prison officials against an inmate for exercising his First Amendment rights constituted a violation of substantive due process. *Id.* at 1402. The court held that Black's complaint created an inference that the defendants retaliated against him for exercising his First Amendment rights by filing an administrative complaint against prison officials. *Id.* See also, *Bryant v. Northeast Illinois Regional Commuter Railroad Corp.,* 809 F.Supp. 584 (N.D.Ill.1992) (retaliatory discharge that violated First Amendment rights supported claim under § 1983 and the First and Fourteenth Amendments); *Woerner v. Brzeczek,* 519 F.Supp. 517, 522 (N.D.Ill.1981) (complaint alleging retaliation for filing complaints of sexual harassment stated cause of action under § 1983 because such speech may be entitled to constitutional protection under First Amendment).

Under *Black,* in order to state a substantive due process claim under § 1983, the facts alleged in Count III must create a reasonable inference that defendants retaliated against plaintiff for exercising his First Amendment rights. While defendants emphasize in their reply brief that Count III fails to specifically mention the First Amendment, as discussed above this is not fatal to the complaint. *Teumer,* 34 F.3d at 545. At this stage of the proceedings, if the facts alleged support a reasonable inference that plaintiff's First Amendment rights may have been violated, the complaint adequately states a claim under § 1983. See *Simmons v. Chicago Public Library,* 860 F.Supp. 490, 493 (N.D.Ill.1994) (while plaintiff's § 1983 claim completely failed to identify what constitutional right her employer's discriminatory practices allegedly violated, after "taking all reasonable inferences in her favor" the court held that plaintiff adequately pled a violation of equal protection of the laws).

■ A public employee's speech is protected by the First Amendment if: (1) it touches on a matter of public concern, and (2) the employee's interest in speaking outweighs any injury the speech could cause the employer's interest in promoting effective and efficient public service. *Waters v. Churchill,* —— U.S. ——, 115 S.Ct. 49, 130 L.Ed.2d 10 (1994). Consequently, "[n]ot all speech by public employees is protected by the First Amendment such that constitutional concerns are raised if a public employer retaliates in response to that speech." *Cliff v. Board of School Commissioners of Indianapolis, Ind.,* 42 F.3d 403, 409 (7th Cir.1994).

■ In determining whether the speech is a matter of public concern, the "content, form, and context" of the speech must be

considered. *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). It is generally the content of the speech that is the most important. *Cliff,* 42 F.3d at 409. However, even if the topic is deemed one of public import, that "does not automatically render [the employee's] remarks on that subject protected." *Smith v. Fruin,* 28 F.3d 646, 651 (7th Cir.1994). Consequently, "the public concern element is lacking as a matter of law if speech 'concerns a subject of public interest but the expression addresses only the personal effect upon the employee.'" *Cliff,* 42 F.3d at 410 (quoting *Marshall v. Porter County Plan Comm'n,* 32 F.3d 1215, 1219 (7th Cir.1994)). The Seventh Circuit has emphasized that in determining whether speech is of public concern, the focus is on whether the employee's intent was to further a public or a purely private interest. *Phares v. Gustafsson,* 856 F.2d 1003, 1008 (7th Cir.1988).

In Count III of his complaint, plaintiff alleges that beginning in June 1992, he objected to the defendants' racially discriminatory practices against African–American agents. Plaintiff advised his supervisors about his objections and threatened to file formal charges if the Department's racially discriminatory practices continued. Plaintiff spoke to his supervisors about the Department's potentially actionable discrimination before any of his own employment problems began. Additionally, plaintiff alleges that he also complained about defendants' discriminatory hiring practices. Since plaintiff was already employed by the Department, these complaints were clearly not a matter of private concern. In several paragraphs of Count III, plaintiff refers to his complaints of defendants' discriminatory practices against African–American agents as a group. Based on these allegations, the court finds that it is reasonable to infer that plaintiff's complaints about the Department's racially discriminatory conduct concerned other African–American agents generally. Consequently, the subject matter of plaintiff's allegations appears to be a matter of public concern. See *Pollard v. City of Chicago,* 643 F.Supp. 1244, 1249 (N.D.Ill.1986) (speech identifying potentially actionable discrimination by government employees constitutes a matter of public concern).

Because it finds that plaintiff alleges speech that may touch on matters of public concern, the court must proceed to the second element of the *Waters* test: whether the public employer's interest in promoting the efficiency of public services outweighs the employee's interest in expression. Based on the above stated allegations, and giving plaintiff all favorable inferences, the court finds that plaintiff may be able to prove a set of facts entitling him to relief. See *Pollard,* 643 F.Supp. at 1249 (on a motion to dismiss public employee's First Amendment claim, it could not be said as a matter of law that the employer's interest in efficiency outweighs the employee's interest in expression, rather, "the Court need only note that the ... [employee's] speech ... would tend to aid the efficient operation of [the] Department"). Therefore, the court finds that at this stage of the proceedings, plaintiff has sufficiently stated a § 1983 claim that his constitutional rights were violated by defendants' alleged retaliatory conduct. Accordingly, defendants' motion to dismiss Count III for failure to state a claim under § 1983 is denied.

## CONCLUSION

For the reasons set forth above, the court grants the motion to strike Counts I and II against Steven Hirsch, and denies defendants' motion to dismiss Count III.