### Shanae MONGER, Plaintiff,

v.

### PURDUE UNIVERSITY, Gavriel Salvendy, as Professor and Agent for Purdue University, and Gavriel Salvendy, Individually, Defendants.

#### No. IP 96–0866 C M/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 14, 1997.

---

John O. Moss, Jr., John O. Moss, Jr. & Associates, Indianapolis, IN, for Plaintiff.

Stephen R. Pennell, Deborah B. Trice, Stuart & Branigin, Lafayette, IN, for Defendants.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McKINNEY, District Judge.

The present case involves serious allegations against one of our state universities and one of its professors. Plaintiff Shanae Monger has asserted that Gavriel Salvendy, a professor at Purdue University, sexually harassed her on October 29, 1993. Through an action filed May 16, 1996, Monger has stated a variety of claims against the University and Salvendy, in both his individual and his official capacities. These defendants now seek

summary judgment, claiming that the applicable statute of limitations bars Monger from pursuing her claims against them. For reasons stated fully below, this Court now **GRANTS** the defendants' motion for summary judgment.

## I. BACKGROUND

In October of 1993, Monger was a student at Purdue University, and Salvendy was a Professor of Industrial Engineering in the University's School of Industrial Engineering. Prior to the alleged incident, Monger had worked for Salvendy as a student assistant. On October 29, 1993, Monger telephoned Salvendy to express interest in returning to work for him. Following this conversation, Monger went to Salvendy's office to continue this discussion. According to the verified complaint, Salvendy invited Monger to his office for this conversation. After Monger arrived, she and Salvendy got in Salvendy's car, and Salvendy drove her to a secluded, wooded area called "Happy Hollow." Here, Monger alleges, Salvendy sexually harassed her by touching her against her will on various parts of her body and indicating that he wanted to be with her privately. Monger has stated that she resisted Salvendy's advances. After this occurred, Salvendy took Monger back to her apartment, where she and her roommate discussed what had happened.

On March 16, 1994, Monger filed an internal complaint of sexual harassment pursuant to the University's Interim Procedures for Handling Complaints of Sexual Harassment.[1] As required by these Procedures, Dr. Judith M. Gappa, Purdue's Vice President of Human Relations, appointed a three-person Panel to investigate Monger's complaint. Salvendy submitted a written response to the complaint, denying that the incident had occurred. After completing the investigation, the Panel submitted its report to Dr. Gappa, who sent copies of the report to Monger and Salvendy on May 16, 1994. Dr. Gappa also reminded them that they could submit writ-

---

1. In part, the these procedures indicate that "[w]hile use of these procedures is encouraged for members of the University community, such use does not foreclose legal action. Complain-

ants or persons accused may wish to obtain legal advice as they consider the other courses of action available to them under state and federal laws." Gappa Aff., Ex. 2–1.

ten comments about the report to her before she reviewed the Panel's findings. Both Monger and Salvendy provided such comments. In letters dated June 21, 1994, Dr. Gappa informed Monger and Salvendy that she concurred with the Panel's conclusion that there was not sufficient evidence to substantiate Monger's internal complaint. Monger has denied receiving this letter. On April 22, 1994, while the Panel was conducting its investigation, Monger filed a Tort Claims Notice with the Indiana Attorney General regarding the incident with Salvendy. She filed the present action on May 16, 1996.

## II. ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When the moving party has met this standard, summary judgment is mandatory. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Irrelevant or unnecessary facts do not deter summary judgment—even when in dispute. *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir.1992).

### B. THE APPLICABLE STATUTE OF LIMITATIONS AND THE ACCRUAL OF THE CAUSE OF ACTION

■ Through the present action, the plaintiff has relied upon a variety of legal theories, including assault, infliction of emotional distress, negligence, and two federal statutes—42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972.[2] The defendants maintain that Indiana's two-year statute of limitations operates as a bar to these claims. According to section 34–1–2–2(1) of the Indiana Code, actions "[f]or injuries to person or character" must be commenced within two years of the date the cause of action accrued. To determine the accrual date, Indiana applies a form of discovery rule, meaning that the cause of action accrues on the date the plaintiff knew or, in the exercise of reasonable diligence, could have discovered that she had sustained injury as a result of some tortious conduct. *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 842 (Ind.1992); *City of Hobart Sewage Works. v. McCullough*, 656 N.E.2d 1185, 1189 (Ind.Ct.App.1995) *trans. denied.* Treating the state law claims for assault, negligence, and emotional distress first, Monger knew that she had suffered these injuries on October 29, 1993—the date she alleges that Salvendy sexually harassed her.[3] Indeed, im-

---

**2.** The complaint also appeared to state a Title VII claim, but the brief in opposition to the present motion plainly indicates that the plaintiff no longer seeks any remedy under Title VII.

**3.** Monger has argued that this Court should apply the five-year statute of limitations for claims against officers or employees of the State, but Indiana law specifically excludes employees of state educational institutions. Monger's attempts to recharacterize Salvendy as an "officer" rather than an "employee" do not find support in Indiana law.

Moreover, Monger has argued that her cause of action did not accrue until she learned of the University's final decision regarding Salvendy. The lone case cited in support of this proposition involves inapposite facts. In *Colburn v. Trustees of Indiana University*, 739 F.Supp. 1268

(S.D.Ind.1990), this Court ruled that a former university professor did not know he had suffered an injury until the school informed him of its final decision not to reappoint him. By contrast, Monger knew on October 29, 1993, that she had suffered a significant injury—regardless of the university's determination. The plaintiff has not identified, nor has this Court's research uncovered, any analogous case involving an internal investigation of a previous incident of sexual harassment in which a court held that the plaintiff did not know she had suffered an injury until the investigating body had informed her of its findings. Here, the cause of action accrued when Monger knew she had suffered sexual harassment—not when she learned of the University's response.

As an additional note, Monger has correctly noted that a claim for defamation would accrue,

mediately after Salvendy returned her to her apartment, she discussed the incident with her roommate, indicating that she knew the event had occurred and had not repressed the memory. Accordingly, her cause of action for these claims would have accrued on that date, and the two-year statute of limitations will operate as a bar unless the statute tolled for some reason.[4]

■ This same two-year statute of limitations bars Monger's federal claims as well. Treating the claim under 42 U.S.C. § 1983 claim first, the Supreme Court has noted that the statutory text does not contain an explicit limitations period. *Wilson v. Garcia,* 471 U.S. 261, 266, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985). When a federal statute does not identify a particular statute of limitations, a court should adopt "the statute governing an analogous cause of action under state law" to determine the applicable period. *Id.* at 271, 269, 105 S.Ct. at 1944, 1943. For section 1983 claims, the *Wilson* Court found the state personal injury statute of limitations to be the most appropriate. *Id.* at 276, 280, 105 S.Ct. at 1947, 1949; *Farrell v. McDonough,* 966 F.2d 279, 280 (7th Cir.1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1059, 122 L.Ed.2d 364 (1993); *see also Wilson,* 471 U.S. at 279, 105 S.Ct. at 1948 ("[W]e are satisfied that Congress would not have characterized § 1983 as providing a cause of action analogous to state remedies for wrongs committed by public officials."). Consequently, Indiana's two-year personal injury statute of limitations applies to Monger's section 1983 claim. Ind.Code § 34–1–2–2; *see also Perez v. Sifel,* 57 F.3d 503, 505 (7th Cir.1995) ("[T]he two-year Indiana statute of limitations for personal injuries [ ] applies to § 1983 claims.").

■ While courts look to state law to determine the length of the limitations period, the date of accrual of the cause of action remains a function of federal law. *Lawshe v. Simpson,* 16 F.3d 1475, 1478 (7th Cir.1994).

Ultimately, though, this rule does not impact the present case, for the claim would accrue at the same time under state or federal law. As stated by the Seventh Circuit, "[s]ection 1983 claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Id.* Here, Monger would have known of the injury to her constitutional rights on the date of the alleged attack. Her section 1983 claim accrued on October 29, 1993, and the two-year statute of limitations operates as a bar unless something tolled the statute.

Like section 1983, Title IX does not contain an explicit statute of limitations, so this Court must look to the limitations period of an analogous claim under Indiana law. *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 729 (6th Cir.1996); *Egerdahl v. Hibbing Community College,* 72 F.3d 615, 617 (8th Cir.1995). The courts of appeals to address this issue have consistently held that Title IX claims are most closely analogous to state law personal injury claims. *Lillard,* 76 F.3d at 729; *Egerdahl,* 72 F.3d at 618; *see also Cetin v. Purdue University,* Nos. 94–3112, 95–1254, 1996 WL 453229, at *2 (7th Cir. Aug. 7, 1996) ("We agree with the defendants that [the plaintiff's] Title IX claim falls outside of the limitations period, which is two years under the relevant statute of limitations, Ind.Code 34–1–2–2(1)."). This Court agrees and finds that Indiana's two-year statute of limitations for personal injury claims applies to Monger's Title IX claim. According to the principles from *Lawshe,* 16 F.3d at 1478, Monger's Title IX claim accrued when she knew or had reason to know of her injury—October 29, 1997. Again, the statute of limitations bars this claim unless outside circumstances tolled the statute of limitations.

## C. THE TOLLING OF THE STATUTE OF LIMITATIONS

Despite the operation of the two-year statute of limitations, Monger could still pursue

not on the date of the alleged sexual harassment, but on the date Monger learned of the purportedly defamatory statements. This observation does not benefit Monger because this Court, in an Order dated January 24, 1997, declined to allow Monger to amend her complaint to add a defamation claim.

4. Whether circumstances operated to toll the statute of limitations in the present case shall be discussed in the following section.

her present action if, as she claims, the facts of the case suggest that the statute should be tolled. Of course, the question of whether the statute tolled on Monger's state law claims hinges upon Indiana law. Likewise, tolling of the statute for the Title IX and section 1983 claims also depends upon Indiana law. *See Wilson,* 471 U.S. at 269, 105 S.Ct. at 1943 ("[T]he length of the limitations period, and closely related questions of tolling and application are to be governed by state law."); *Delgado–Brunet v. Clark,* 93 F.3d 339, 342 (7th Cir.1996) (noting that section 1983 claims "are considered as personal injury claims, and are governed by the personal injury statute of limitations and tolling laws in the state where the alleged injury occurred.").

■ The Indiana legislature has delineated certain specific circumstances in which the statute of limitations will be tolled. *See* Ind. Code § 34–1–2–5 to 34–1–2–9. Under Indiana law, the statute of limitations may only be tolled "for legal disability, including incompetence, minority, imprisonment, nonresidency under certain circumstances, war, death in certain instances, and fraudulent concealment." *INB Nat'l Bank v. Moran Elec. Service,* 608 N.E.2d 702, 707 (Ind.Ct. App.1993) (citing *Walker v. Memering,* 471 N.E.2d 1202 (Ind.Ct.App.1984)). In addition, fraudulent concealment has been recognized by Indiana courts as an equitable doctrine which " 'operates to estop a defendant from asserting a statute of limitations defense when that person, by deception or a violation of a duty, has concealed material facts from the plaintiff thereby preventing discovery of a wrong.' " *Hughes v. Glaese,* 659 N.E.2d 516, 519 (Ind.1995) (quoting *Hospital Corp. v. Hiland,* 547 N.E.2d 869, 873 (Ind.Ct.App. 1989), *aff'd,* 561 N.E.2d 758 (Ind.1990)). In the brief in opposition to the present motion for summary judgment, Monger asserts that the panel "misled" her "by giving her the impression that she should wait for their issuance of a final decision—a decision which was not forthcoming" and contends that the "misleading conduct by the Defendants or their agents is a basis for [tolling] the statute of limitations." Pl's. Br., p. 10. Although Monger refers to these actions to support a general claim for equitable tolling, she alleges facts closely akin to a claim of fraudulent concealment, either under the statute or the equitable doctrine.

■ Fraudulent concealment may arise from active efforts to conceal a wrong or from failure to disclose confidential information if a fiduciary or confidential relationship exists between the plaintiff and the defendant. *Hughes,* 659 N.E.2d at 519. Where no fiduciary or confidential relationship exists, the concealment "must be active and intentional." *Hildebrand v. Hildebrand,* 736 F.Supp. 1512, 1523 (S.D.Ind.1990). In other words, the defendant's conduct "must be calculated to mislead and hinder a plaintiff from obtaining information by the use of reasonable diligence, or to prevent inquiry or investigation." *Id.* Moreover, for the doctrine to apply, Indiana law requires "a showing of reasonable care and due diligence on the part of the plaintiff." *Doe v. United Methodist Church,* 673 N.E.2d 839, 844 (Ind.Ct.App. 1996).

The facts in the present record do not suggest that the statute of limitations should be tolled on the basis of fraudulent concealment. Monger has not supplied evidence to demonstrate the existence of a confidential or fiduciary relationship, so she must instead present evidence that the defendants took active measures to prevent from discovering that she had a cause of action. She has not done so. The record establishes that Monger knew about her injury right after it occurred; indeed, she spoke with her roommate about the incident immediately after returning home that day. No action by the University or by Salvendy prevented Monger from discovering the wrong which had occurred.

The administrative investigation by the University does not alter this conclusion. The record does not suggest that the University concealed its investigative process from Monger's view. After the Panel had completed its investigation, Dr. Gappa solicited comments from Monger, who responded with a written statement. Dr. Gappa then reviewed the Panel's findings, as well as the written materials from Monger and Salvendy, and sent letters to the parties to inform

them that she agreed with the Panel's conclusion. Although Monger contends that she never received this letter, that does not demonstrate "active and intentional" steps to conceal information from her. More importantly, no evidence establishes that Monger exercised "reasonable care and due diligence" to discover the panel's findings. While she did take the opportunity to respond when invited to do so, the record does not suggest that Monger took any subsequent steps to learn of the official resolution of the matter. There is no evidence that she called Dr. Gappa about the matter or that she submitted any written requests regarding the ultimate conclusion. Instead, she simply waited until, after two years had passed from the date Dr. Gappa informed her she could submit a written statement, she filed the present action. Because the record does not demonstrate "active and intentional concealment" by the defendants or "due diligence" by the plaintiff, this Court finds the doctrine of fraudulent concealment inapplicable in the present case.

On a general level, Indiana does appear to allow equitable tolling. *Farm Credit Svcs. v. Estate of Decker,* 624 N.E.2d 491, 494 (Ind.Ct.App.1993) ("The time limit imposed by a statute of limitations ... may be tolled on equitable grounds."). As described by the Seventh Circuit, "[t]he doctrine of equitable tolling aids plaintiffs who because of 'disability, irremediable lack of information, or other circumstances beyond [their] control just cannot reasonably be expected to sue in time.'" *Hoosier Bancorp of Indiana, Inc. v. Rasmussen,* 90 F.3d 180, 183 (7th Cir.1996) (quoting *Miller v. Runyon,* 77 F.3d 189, 191 (7th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 316, 136 L.Ed.2d 231 (1996)). However, the doctrine "does not provide aid to those plaintiffs who fail to research the requirements of bringing a lawsuit." *Id.* In the present case, Monger has not demonstrated any disability, lack of information, or "other circumstances" which prevented her from filing her claim in a timely manner. Equitable tolling does not save her claim.

This Court finds that none of the circumstances which justify the tolling of Indiana's statute of limitations are present in this case.

Therefore, the two-year personal injury statute of limitations applies.

### CONCLUSION

In the brief in support of the present motion, Salvendy and Purdue University describe the facts of this matter as "one-sided." This overstates the strength of their case. If this Court had occasion to review the factual merits of Monger's sexual harassment claim, genuine issues of fact would likely preclude the entry of summary judgment. However, the procedural setting of the case does not allow such review. Indiana's two-year personal injury statute of limitations bars Monger from pursuing her claims against either defendants, and the record does not evince any outside circumstances which might toll the statute. Accordingly, this Court now **GRANTS** the motion for summary judgment filed by Salvendy and Purdue University.